CIRCUIT COURT FOR MULTNOMAH COUNTY, JUNE TERM, 1868.

## JAMES B. STEPHENS *v.* JOSEPH KNOTT.

Where S. has a contract with K., the owner of a ferry, that S. and his family shall have their ferryage free; and S. owns land on which there is a saw-mill and growing timber, and contracts with N. that N. shall use the saw-mill and saw the growing timber at N.'s expense and cost; and S. shall convey the lumber from the mill across the ferry and sell it, and the two shall divide the gross proceeds equally; and S. hires G. to haul the lumber across the river at the ferry for $3 per thousand—the ferryage of the lumber across the river is not the ferryage of S., and K. is not obliged to ferry the lumber free of charge.

*Logan & Shattuck.* for the plaintiff.

*D. Fredenrich,* for the defendant.

IN March, 1861, the plaintiff sold to the defendant the ferry across the Willamet river at Portland. As a part of the consideration of the sale and transfer, the defendant stipulated "that the said James B. Stephens, party of the first part, and his family shall have their ferryage free from all charges and demands forever."

Stephens was then a farmer, having a family, and having teams and some employees at work on his farm. In 1867 he purchased a saw-mill, and contracted with a Mr. New that New should cut and haul the logs from timber growing on Stephens' land and saw them at the mill at his own expense. Stephens, at his expense, should take the lumber at the mill, convey it to Portland and sell it, and after sales, New should have one half of the gross proceeds and Stephens the other half. Lumber was cut in pursuance of the contract, and Stephens sold to a Mr. Guild teams, upon consideration that the teams should become the property of Guild when Guild should pay the agreed price thereof to Stephens, by hauling said lumber from the mill to Portland at an agreed price of $3 per thousand, Stephens engaging to Guild that the ferryage was paid for and should cost Guild nothing. Guild commenced hauling the lumber, and the defendant refused to permit Guild to cross with

the lumber on the ferry, without payment. Stephens paid, under protest, the usual rates of ferryage, and he brings this action to recover back the money so paid and damage for detention and delays thus caused.

*Logan & Shattuck,* for defendant, claim :

1. That this is not the business of Stephens, or of Stephens and his family.

2. That it is not the ferryage of Stephens, but of the party who engaged to haul the lumber.

3. That it is not the ferryage of Stephens, but that of Stephens and Mr. New.

4. That the true meaning of the contract is, that Stephens was·to have the amount, or at least the kind of ferrying done that was consistent with the business in which he was engaged at the time of taking the contract.

The cause was tried without a jury and the following decision was rendered :

UPTON, J. Whether Guild, while hauling lumber by the thousand, shall be considered as a principal in the business of hauling the lumber,. that is, as doing business for himself; or as the agent of the plaintiff Stephens and doing the business as an agent, is one of the questions to be determined. For some purposes he would necessarily be considered an agent, and for other purposes it is equally certain he is a principal. He was a bailee of the lumber, and therefore an agent; for the idea of agency is necessarily involved in every bailment.

But in the business of hauling lumber and the profits to be made from it, when considered abstractly from any consideration of ownership of the lumber, he·was acting as a principal.

Then how is the owner of a ferry authorized to look upon and treat such a business? What would be the respective rights and liabilities of Stephens and Guild if dealing with a ferryman who had no contract with either of them? Would the ferryman upon demand being made by Guild, be bound to take notice of the relations existing between Stephens

and Guild? If Guild used the ferry and refused payment, could the ferryman recover the toll in an action? And could Guild defend by pleading against the ferryman, that Stephens was the party demanding the use of the ferry?

It was said in argument that because Stephens and Guild had expressly agreed that Guild should pay no toll, the business of hauling still continued the business of Stephens. That Guild could not be under any obligations to pay on Stephens' lumber, when by the very terms of his employment it had been agreed that Stephens should discharge that duty.

This position is not well founded. Knott was not a party to the contract between Stephens and Guild, and a mere agreement between the latter two, that the ferrying should be done on Stephens' account, would not increase or change Knott's liabilities or obligations. As between them, or either of them and Knott, that agreement did not give or take away any rights. Knott's right to charge ferryage depended upon the question, whose business was the transportation of the lumber. If Guild became principal in the business of hauling, then it was no longer Stephens' business; and Stephens could not bind defendant, Knott, except in regard to Stephens' business; or, in other words, Stephens' ferrying.

On the next ground of defense urged, we are to inquire whether conveying lumber to Portland (if it had been done without the intervention of Guild) would be considered the business of Stephens, or the business of Stephens and another. If the latter, it must be conceded that it is not within the contract. "Where two or more persons place their money, effects, labor and skill, or some or all of them, in business, with an understanding that each is to share in the profits; one may contribute labor or skill, another property, and another money, according as they shall agree." The business is a partnership.

In this case the parties were each to have half the gross proceeds of the lumber. Stephens contributed the growing timber, the use of the mill for the term of the partnership, and the labor and expense of hauling the lumber to town. Mr. New contributed the labor and expense of cutting and

hauling the timber, manufacturing the lumber, and keeping the mill in repair. The business of converting the standing trees into money by the process agreed upon, was a business interesting to, and enlisting the energies and efforts of each of these parties, one as well as the other, from which both were to derive profit. If it was the business of Stephens it was also the business of Mr. New. Independent of any strict definitions, it was a business in which they were jointly interested, and they jointly shared the profits, and consequently it was a partnership business.

But it is claimed that Mr. New's labors upon, and his possession and control of the lumber ceased at the mill, and that by their contract the matter of carrying it to Portland was the sole business of Stephens.

If it were true that Stephens' agreement that he would carry the lumber across the river, made that the sole and individual business of Stephens, it is difficult to see why the contract with Mr. Guild, that Guild would carry it by the thousand, did not again change the matter, and make its carrying to Portland the sole business of Mr. Guild.

If the plaintiff's position can be sustained, Mr Stephens could contract with one set of men to chop and deliver on the east side of the river all the cordwood that could be sold in Portland, and with another set to haul it all across the river, and thus appropriate the cost of ferrying; or, he could contract to carry all the freight of the country across for a percentage on the value.

It will hardly be contended that the plaintiff Stephens could enter into the business of forwarding freight, and contract with the railway company to receive its freight at the east side of the river and convey it to the west side, and there collect all the charges, and return to the company a specified share thereof; and thus, having contracted with other parties to do the wagoning at a certain rate per ton, compel the defendants to pass the wagons over the river free of charge.

Yet the difference between that proposition and the one at bar is, that in that case Stephens and the railway company would not have the general property in the goods car-

ried, while in this case he and New have a general property in the lumber.

The lumber is no more the separate property of Stephens when it is crossing the river, than it is the separate property of New when it is passing through the saw-mill. When in the course of this business the trees are severed from the realty, and the logs are being brought to the mill, they have become the personal property of Stephens and New, and they so remain until, being converted into lumber, they are sold.

I can not doubt but that New is a partner in the whole business of manufacturing the lumber, conveying it to market and selling it. If logs are lost before they are sawed, and the quantity of lumber to be made is thereby diminished, or if lumber is lost while being transported, or if sales are made at reduced price, or the lumber is sold to irresponsible parties, both Stephens and New suffer diminution of profits by the circumstance.

'The fact that it is a special partnership does not affect the main question. If Stephens could make the hauling his individual and sole business, by agreeing that he will personally do the hauling for the whole business, or do it at his own expense, he can make the carrying of any man's freight his ferrying by agreeing to do it at his own expense. But this point is conclusively disposed of so far as this case is concerned, by the circumstance that Stephens hired Guild to haul the lumber across the river at a certain rate per thousand. (1)

---

(1) The decision in this case was reversed on appeal to the supreme court. No written opinion has been filed in that court; but it would seem that a reason was found for holding that Stephens' agreement to furnish the mill and the standing trees, and to transport the lumber for half the gross receipts, made the work Stephens' individual business, while Guild's agreement to transport, for a specified sum per thousand, did not make the transportation Guild's individual business.